# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 07-3673

_____

|  |  |  |
|---|---|---|
| Neighborhood Enterprises, Inc.; Sanctuary in the Ordinary; Jim Roos, | * * * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| City of St. Louis; St. Louis Redevelopment Corporation; Land Clearance for Redevelopment Authority; Land Clearance for Redevelopment Authority Board of Commissioners; Judith Doss, in an official capacity as a member of the LCRA Board of Commissioners; Chris Goodson, in an official capacity as a member of the LCRA Board of Commissioners; Artie Whitmore, in an official capacity as a member of the LCRA Board of Commissioners; Matthew S. McBride, in an official capacity as a member of the LCRA Board of Commissioners; Larry Williams, in an official capacity as a member of the LCRA Board of Commissioners; Rodney Crim, in an official capacity as Executive Director of the LCRA and the SLDC, | * * * * * * * * * * * * * * * * * * * * | |
| Appellees. | * | |

_____

Submitted: June 11, 2008
Filed: August 29, 2008
_____

Before SMITH and GRUENDER, Circuit Judges, and ROSENBAUM,[1] District
Judge.

_____

SMITH, Circuit Judge.

Sanctuary In the Ordinary (SITO),[2] Neighborhood Enterprises, Inc. (NEI),[3] and Jim Roos[4] (collectively "the plaintiffs"), sought declaratory and injunctive relief against the City of St. Louis ("the City"), the St. Louis Development Corporation (SLDC), the Land Clearance for Redevelopment Authority (LCRA), the LCRA Board of Commissioners ("the LCRA Board"), members of the LCRA Board in their official capacities, and the executive director of the LCRA and the SLDC in his official capacity (collectively "the defendants"), over the LCRA's denial of the plaintiffs' sign permit application. The district court ruled that the City's Department of Public Safety, Division of Building and Inspection ("the Building and Inspection Division") made the decision to deny the permit, and thus the Building and Inspection Division, not the defendants, was the proper defendant to the suit. Because the plaintiffs had already initiated a separate suit against the Building and Inspection Division and the City over the permit denial, the district court granted the defendants' motion to dismiss this case. We reverse.

_____

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, sitting by designation.

[2]SITO is a nonprofit corporation that buys and holds residential properties in the St. Louis area to make low-income housing available to persons in need.

[3]NEI is a housing management company that develops and manages the residential properties owned by SITO.

[4]Jim Roos is the founder of both SITO and NEI.

## I. *Background*

From 2000 to 2004, the City, in conjunction with the SLDC and the LCRA, exercised eminent domain to condemn 24 buildings owned by SITO. To protest the condemnations, Roos had a mural—a large red circle with a slash across the words "End Eminent Domain Abuse"—painted on the side of another SITO-owned residential building not taken by the city. The Building and Inspection Division issued SITO, care of NEI, an "illegal sign" notice for the mural. The notice stated that permits were required for "signs" of the type displayed on the building.

On May 14, 2007, NEI filed a sign permit application with the City's Building and Inspection Division. On May 17, 2007, an LCRA employee sent a letter to the Building and Inspection Division, a copy of which was sent to NEI, stating that the sign permit did not have the LCRA's approval because it ran afoul of sign regulation ordinance 64831. Specifically, the letter stated that "[t]he applicant may contest this 'denial' at either the 5/22 or 6/26 LCRA Board meeting."

After it received the LCRA letter, the Building and Inspection Division notified NEI that the sign permit application was denied because it did not meet certain requirements set out in the City Zoning Code. The denial letter from the Building and Inspection Division also informed NEI that it could appeal the denial to the City's Board of Adjustment (BOA).

Following the appeal procedure directed by the Building and Inspection Division's letter, NEI and SITO filed an appeal with the BOA, and the BOA subsequently upheld the denial of the permit. Additionally, in accordance with the letter from the LCRA, NEI and SITO also appeared at the LCRA Board meeting to appeal the LCRA's "denial" of the sign permit application. At the board meeting, the LCRA Board passed a resolution wherein it expressly "denied" the sign permit application and "authorized and directed" LCRA's executive director "to take any and all other necessary and proper actions to effectuate the intent of the Resolution and Ordinance # 64831."

The plaintiffs filed two separate lawsuits relating to the denials of their sign permit application. In this case, they sued the defendants seeking administrative review of the LCRA Board's denial of their permit, claiming that: (1) neither the LCRA or the LCRA Board had authority to grant, deny, or otherwise act on sign permit applications; (2) the LCRA's decision was made based on unlawful procedure because the LCRA did not follow the requirements of the Missouri Administrative Procedure Act; (3) the LCRA's decision was unconstitutional because it violated the due process and free speech protections provided by the United States and Missouri Constitutions; (4) the LCRA's decision was not supported by competent and substantial evidence on the record as a whole; and (5) the LCRA Board's decision was arbitrary, capricious, and unreasonable. The complaint also sought recovery under 42 U.S.C. § 1983 for alleged violations of free speech and due process.

In a separate suit, the plaintiffs challenged the BOA's denial of their sign permit. In that case, the plaintiffs made a civil rights complaint against the City, the BOA, the individual members of the BOA in their official capacity, and the City's zoning administrator in her official capacity, seeking injunctive relief and alleging that the BOA's decision was improper because it: (1) utilized a facially unconstitutional zoning code to limit the plaintiffs' freedom of speech; (2) was an unconstitutional exercise of prior restraints; and (3) deprived the plaintiffs of equal protection in violation of the Fourteenth Amendment. That complaint also sought recovery pursuant to § 1983 for alleged violations of free speech and due process.

The defendants in each case moved to dismiss the respective complaint filed against them. In the case before us, the defendants asserted that the resolution passed by the LCRA Board was not a final decision entitled to judicial review nor was it a decision that determined the legal rights, duties, or privileges of any person. Thus, the defendants argued, the plaintiffs failed to state a claim upon which relief could be granted. The district court agreed and granted the motion to dismiss, ruling that the plaintiffs' alleged harm resulted from the denial of their sign permit. The court also ruled that the Building and Inspection Division, not the LCRA nor its Board, had the

authority to grant or deny the permits, and thus plaintiffs should have sued the Building and Inspection Division instead. Likewise, the district court ruled that the plaintiffs' constitutional and civil rights allegations against the defendants, other than the City, failed because none of these entities or individuals in their official capacities made the final decision to deny the sign permit. Additionally, because the City was also a named defendant in the plaintiffs' other lawsuit, the district court dismissed it from the instant suit as duplicative. Thus, the district court granted the motion to dismiss all claims in this case.[5]

## II. *Discussion*

On appeal, the plaintiffs contend that the district court erred in dismissing their complaint for failure to state a claim. We agree.

"We review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the facts alleged in the complaint as true and granting all reasonable inferences in favor of [the plaintiffs], the nonmoving party." *Stufflebeam v. Harris*, 521 F.3d 884, 886 (8th Cir. 2008). In this case, the district court granted the defendants' Rule 12(b)(6) motion, reasoning that because the plaintiffs' alleged harm resulted from the denial of their sign permit and none of the defendants had the authority to issue the permit, nor made the final decision to deny the permit, the plaintiffs failed to state a claim upon which relief could be granted. The district court's dismissal, however, was in error.

It is immaterial, for purposes of the plaintiffs' § 1983 claim, that the LCRA had no authority to deny the plaintiffs' sign permit application because the LCRA actually took action to deny the permit. Moreover, the plaintiffs plausibly alleged that the LCRA, a municipal entity, acted under color of state law when it interfered with their

---

[5]In the plaintiffs' other suit, the district court dismissed the individual members of the BOA and the Zoning Administrator, but denied the motion to dismiss as to the City and the BOA. The issues from that case are not before us on this appeal.

constitutionally protected speech in violation of their First and Fourteenth Amendment rights. In *West v. Atkins*, 487 U.S. 42 (1988), the Supreme Court explained that "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Id.* at 49. The Court went on to state:

> The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). In *Lugar v. Edmondson Oil Co.*, [457 U.S. 922 (1982)], the Court made clear that if a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, "that conduct [is] also action under color of state law and will support a suit under § 1983." *Id.* at 935. In such circumstances, the defendant's alleged infringement of the plaintiff's federal rights is "fairly attributable to the State." *Id.* at 937.

> To constitute state action, "the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Ibid.* "[S]tate employment is generally sufficient to render the defendant a state actor." *Id.*, at 936, n.18. It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. *See Monroe v. Pape*, 365 U.S. [167, 172 (1961)]. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.

*West*, 487 U.S. at 49–50 (citations omitted).

Following this precedent, we hold that the plaintiffs have alleged a valid claim under § 1983. Plaintiffs alleged that the LCRA violated their constitutional rights to free speech and due process, and the LCRA was clearly acting—or purporting to act—under color of state law. Although it is undisputed that the Building and

Inspection Division was the state actor with *actual* authority to issue the denial of the permit, the plaintiffs properly asserted that the LCRA acted under color of law when it denied the permit, provided an appeal of the denial, issued a resolution of the LCRA Board denying the permit, and authorized its executive director to take action "to effectuate the intent of the Resolution." Even though the LCRA acted outside of its authority, the plaintiffs have nonetheless sufficiently alleged that the LCRA acted under the color of law in purporting to deny the permit. *See Screws v. United States*, 325 U.S. 91, 111 (1945);[6] *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 798 (8th Cir. 1998);[7] *see also Little v. City of N. Miami*, 805 F.2d 962, 967 (11th Cir. 1986).[8]

---

[6]In *Screws*, the Supreme Court explained:

> It is clear that under 'color' of law means under 'pretense' of law. Thus acts of [state actors] in the ambit of their personal pursuits are plainly excluded. Acts of [state actors] who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it. If . . . the statute was designed to embrace only action which the State in fact authorized, the words 'under color of any law' were hardly apt words to express the idea.

325 U.S. at 111.

[7]In *Rogers*, we reiterated:

> An official acts under color of state law even if he abuses the position given him by the State while acting in his official capacity or while exercising his responsibilities pursuant to state law. The issue depends on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties.

152 F.3d at 798 (internal punctuation, quotations, and citations omitted).

[8]In *Little*, the Eleventh Circuit reversed, in part, the district court's dismissal of plaintiff's complaint for failure to state a claim, concluding that plaintiff's assertion that a resolution passed by the city council infringed upon his first amendment and due process rights, viewed in the light most favorable to plaintiff, properly stated cognizable § 1983 causes of action, as the resolution in question could be "fairly characterized as a 'decision officially adopted and promulgated' by the City Council

The district court's summary dismissal of all the plaintiffs' claims based on the defendants' absence of authority missed the gravamen of plaintiffs' § 1983 claim— defendants' purported exercise of authority infringed upon their constitutional rights. The case should proceed further in the litigation process.

### III. *Conclusion*

Accordingly, we reverse the dismissal and remand the case for further proceedings in accordance with this decision.

_____

of North Miami." 805 F.2d at 967 (emphasis omitted) (quoting *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978)).